IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| NATHAN DENSLEY and KELSEY DENSLEY, <br><br> Plaintiffs, <br><br> v. <br><br> PLEASANT GROVE CITY, CENTRAL UTAH WATER CONSERVANCY DISTRICT, JORDAN VALLEY WATER CONSERVANCY DISTRICT, CHRISTINE PETERSEN, SCOTT DARRINGTON, NEAL WINTERTON, AARON WILSON, DANIEL CARDENAS, JACOB HAWKINS, ERIC BUNKER, BEN PURDUE, and STEVE SCHMIDT, <br><br> Defendants. | MEMORANDUM DECISION AND ORDER GRANTING MOTIONS TO DISMISS <br><br><br> Case No. 2:25-cv-00257-JNP-DAO <br><br> District Judge Jill N. Parrish |

Before the court are three motions to dismiss for failure to state a claim filed by the defendants in this case: (1) a motion to dismiss filed by Pleasant Grove City and its employees, Christine Petersen, Scott Darrington, Neal Winterton, Aaron Wilson, Daniel Cardenas, and Jacob Hawkins (collectively, the Pleasant Grove defendants), ECF No. 34; (2) a motion to dismiss filed by the Central Utah Water Conservancy District (the CUWCD) and its employee, Eric Bunker (collectively, the CUWCD defendants), ECF No. 33; and (3) a motion to dismiss filed by the Jordan Valley Water Conservancy District (the JVWCD) and its employees, Ben Purdue and Steve Schmidt (collectively, the JVWCD defendants), ECF No. 40.

The motions are GRANTED. The court dismisses the federal constitutional claims on the merits. The court dismisses the state-law claims and the declaratory relief claim without prejudice for lack of subject matter jurisdiction.

**BACKGROUND[1]**

Plaintiffs Nathan Densley and Kelsey Densley own a home located on Lot 8 of the Riverchase subdivision in Pleasant Grove, Utah. The Riverchase subdivision sits entirely on a 50-acre tract of land that had been farmed as a fruit orchard beginning in the 1930s. During the period of time that the property was operated as an orchard, water from irrigation and storm runoff collected in two water detention basins on the property. In 2002, the owner of the orchard property sold a portion of the property to a residential housing developer. The property was rezoned from agricultural to single-family residential, and the Riverchase subdivision was created. The two water detention basins are located on Lot 8 of the development. The Murdock Canal ran on the west side of Lot 8.

In March 2002, a subdivision plat map was recorded with Utah County. The subdivision plat states that there is a "Storm Drain Detention and Utility Easement" on Lot 8. But the recorded subdivision plat does not set forth the metes and bounds of the easement or indicate Pleasant Grove's authority to enforce the easement. In November 2002, an "as-built" drawing of the subdivision was recorded. This document states that two detention basins on Lot 8 are "to be grass, with automatic sprinkler system." But the November 2002 drawing similarly does not set forth the metes and bounds of the easement or detail Pleasant Grove's jurisdiction over the easement. The

---

[1] The court recites the relevant facts as pled in the Densleys' complaint.

2

purported easement for the water detention basins is commonly referred to as the Strom Drain Easement in this litigation.

The JVWCD holds a separate easement on Lot 8, known as the Jordan Aqueduct Easement. This easement has been recorded with Utah County and sets forth the rights and responsibilities of the dominant and subservient estates of the easement.

In 2005, Robert and Jane Walter purchased Lot 8. When the Walters owned Lot 8, the water detention basins would fill with water nearly every time it rained or when the owner of the remainder of the orchard irrigated. Mr. Walter contacted Pleasant Grove City to give notice that the drains for the water detention basins were clogged. The city dispatched workers to clean out the drains. The Walters periodically cleaned the drains to ensure that they were working properly. In 2012, the Murdock Canal was converted to an underground pipe.

In 2018, the Densleys purchased Lot 8. They live in a home located on the lot. In 2020, the Densleys began working with the CUWCD and the JVWCD to obtain approval for planned improvements to Lot 8, including landscaping, replacing fencing, and installing a pickleball court on the portion of the lot covered by the Jordan Aqueduct Easement. The Densleys obtained approvals from the CUWCD, the JVWCD, and the U.S. Bureau of Reclamation to proceed with the improvements, including the removal of 150 tons of material, prepping and compacting the soil, and pouring a 30-by-60-foot concrete pad. These planned improvements were not on the Storm Drain Easement.

From December 2021 through May 2022, Mr. Densley attempted to communicate with Pleasant Grove City regarding the project but received no response. In April 2022, Mr. Densley sent an email to Pleasant Grove notifying it that the concrete pad would be poured and that this work would not affect the Storm Drain Easement. Mr. Densley stated that once the concrete pad

was finished, his plan was to commence work on improvements to the water retention basins and that he would like to schedule a site visit with city officials to discuss this phase of his plan. On June 8, 2022, Pleasant Grove employees Neal Winterton and Aaron Wilson visited Lot 8 and spoke to Mr. Densley about the project. On June 13, 2022, Mr. Densley and Pleasant Grove employees had a pre-engineering meeting to discuss Mr. Densley's idea to combine the two retention basins.

On June 14, 2022, Mr. Densley sent an email to Pleasant Grove employees inquiring about a fence permit requirement. Winterton provided the following response: "Nathan, unfortunately, you are currently working in an area where you have been asked to stop working until you have authorization to move forward with any further disturbance of any kind. Please stop the work until you have an approved plan and a notice to proceed from the City." On the morning of June 15, 2022, Mr. Densley emailed a list of planned improvements that did not require a permit. Winterton did not respond. But later that day a Pleasant Grove employee placed three stop-work signs on Lot 8.

On July 19, 2022, Pleasant Grove City filed misdemeanor criminal charges against Mr. Densley pursuant to Pleasant Grove City Code Sections 7-8-2, and 7-8-16 for performing work in a public way without a permit. On July 30, 2022, Winterton emailed Mr. Densley, stating: "Nathan, we are still waiting for a plan. Please discontinue working until we have an agreed upon plan." On August 11, 2022, the Densleys met with Pleasant Grove employees in an attempt to resolve their disputes with the city. The next day, Mr. Densley sent an email to Winterton and the City Attorney, Chistine Petersen, stating:

> There is a breach in the far north basin from the heavy rain a couple of weeks ago. The as-built shows grass and sprinklers which never happened so erosion has been a consistent problem in this basin. We are supposed to get some heavy rain so I added some rocks by hand

4

and would like to drop a bucket or two of dirt using my bobcat to fix this.

On August 15, 2022, Winterton provided the following response: "Nathan, the basin appears to be performing differently than it has in the past since the modifications began. The outlet seems to be affected. If you are concerned that your modifications may affect downstream or adjacent property owners, I recommend placing sandbags to direct flows to the correct location." Contrary to Winterton's assertion, the Densleys had not modified the water detention basins, which had been underperforming in the same manner for years. On November 25, 2022, Mr. Densley informed Pleasant Grove City that he and his wife decided not to move forward with the plan to combine the water detention basins.

The misdemeanor criminal charges against Mr. Densley remained pending for approximately the next two years. Mr. Densley negotiated with the prosecutor, filed a motion to dismiss the charges, filed motions in limine, and hired an expert witness during the pendency of the criminal case against him. Around early October 2024, the prosecutor assigned to Mr. Densley's case represented that he would dismiss the charges if a site survey showed that the water retention basins were fully functional and in the proper location. On October 16, 2024, Mr. Densley's attorney delivered a copy of an expert report showing that the basins were functioning properly. On October 23, 2024, the Pleasant Gove prosecutor dismissed the criminal case.

On April 3, 2025, the Densleys filed this civil action against the Pleasant Grove defendants, the CUWCD defendants, and the JVWCD defendants. They asserted ten causes of action against all of the defendants: (1) a claim for violations of the Due Process Clauses of the U.S. and Utah Constitutions; (2) a claim for violations of the Takings Clauses of the U.S. and Utah Constitutions; (3) a claim for violations of the Equal Protection Clauses of the U.S. and Utah Constitutions; (4)

5

civil conspiracy under federal law; (5) malicious prosecution under state law; (6) intentional and negligent infliction of emotional distress under state law; (7) trespass to property under state law, (8) defamation under state law; (9) intentional and negligent interference with economic relations under state law; and (10) a claim for declaratory judgment under 28 U.S.C § 2201. The Pleasant Grove defendants, the CUWCD defendants, and the JVWCD defendants each filed a motion to dismiss all claims against them for failure to state a claim.

## LEGAL STANDARD

The defendants argue that all claims against them should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a court may dismiss an action if the complaint fails "to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). When considering a motion to dismiss for failure to state a claim, a court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013).

## ANALYSIS

### I.      FEDERAL DUE PROCESS CLAIM

The Due Process Clause of the Fourteenth Amendment prohibits any state or its political subdivisions from depriving "any person of life, liberty, or property, without due process of law." There are two types of due process protections: procedural and substantive. "Procedural due process ensures the state will not deprive a party of property without engaging fair procedures to reach a decision, while substantive due process ensures the state will not deprive a party of property for an arbitrary reason regardless of the procedures used to reach that decision." *Hyde Park Co. v.*

*Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000). The Densleys claim that the Pleasant Grove defendants[2] violated both procedural and substantive due process protections by issuing stop-work orders and by bringing misdemeanor criminal charges in relation to improvements that purportedly affected the Storm Drain Easement on Lot 8.

> A.      *Procedural Due Process*

The fundamental requirements of procedural due process are notice and a meaningful opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 348–49 (1976). "To determine whether a plaintiff has been deprived of procedural due process, courts ask two questions: (1) Did the plaintiff possess a protected property or liberty interest to which due process protections apply? And if so, (2) was the plaintiff afforded an appropriate level of process?" *Martin Marietta Materials, Inc. v. Kansas Dep't of Transp.*, 810 F.3d 1161, 1172 (10th Cir. 2016). The Densleys argue that the Pleasant Grove defendants deprived them of their property right to improve their land without adequate process under two distinct theories.

---

[2] In the complaint, the headings for the Densleys' due process, takings, and equal protection claims state that these causes of action are asserted against all defendants. But the allegations of fact for each of these claims reference only the actions of Pleasant Grove City and its employees—namely, issuing the stop-work orders and criminal citations—and do not mention any actions taken by the CUWCD defendants or the JVWCD defendants. Absent any specific allegations against these defendants, the Densleys have not stated a constitutional claim against them. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." (citation omitted)). Moreover, the headings of a complaint do not control which defendants are implicated by a particular cause of action; the substance of the factual allegations define the claims. *Cf. United States v. Washington*, 759 F.3d 1175, 1179 (10th Cir. 2014) ("In general, the allegations in the body of a complaint, not the names in a caption, determine the parties to a lawsuit." (citation omitted)). For the federal constitutional claims, therefore, the court addresses the allegations against the Pleasant Grove defendants. But the court dismisses these claims as to all defendants.

First, the Densleys argue that the Pleasant Grove defendants' actions of issuing stop-work orders and bringing misdemeanor criminal charges against Mr. Densley "lacked procedural safeguards because the City knew, or should have known, that there was not a legal[] storm drain detention and public utility easement." ECF No. 45 at 8. The Densleys contend that the Storm Drain Easement is not valid or enforceable because references to the easement on the recorded plat map are too indefinite and because the asserted easement violates the Utah statute of frauds. *Id.* at 11–14. Alternatively, they argue that the stop-work orders and criminal charges were not justified because the work that they performed did not affect the Storm Drain Easement. *Id.* at 14–15. Thus, the Densleys contend that the stop-work orders and the criminal charges were legally defective.

Regardless of their merits, these arguments do not implicate procedural due process protections. "In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law.*" *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). "Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate." *Id.* at 126. But the Densleys' arguments regarding the validity and the scope of the Storm Drain Easement do not identify any deficiency in the procedures provided by Pleasant Grove to challenge either the stop-work order or the criminal charges. A disagreement with the substantive outcomes of those proceedings or a challenge to the legal foundation for the deprivation of the Densleys' property interests fails to state a procedural due process claim. *See Moore v. Bd. of Cnty. Comm'rs*, 507 F.3d 1257, 1259 (10th Cir. 2007) (rejecting a procedural due process challenge to a sheriff deputy's breach of a policy prohibiting him from exceeding the posted speed limit by more than ten miles per hour, reasoning that this policy "is not a procedure,

it is a substantive matter. It sets a standard of conduct. The *procedural* due process issue, then, is what procedures, if any, are required before a person is deprived of the benefits of compliance with that standard.").

Second, the Densleys argue that the Pleasant Grove defendants violated procedural due process protections by failing to give adequate notice of the stop-work orders. The Pleasant Grove City Code outlines the procedures for these orders. Section 7-8-17 of the Code provides that a stop-work order

> shall take effect immediately upon entry thereof by the city engineer and notice to the person performing the work in the public way. Notice to the person performing the work shall be accomplished when the city engineer has posted a stop work order at the location of the work and written notice has been mailed, return receipt requested, to the address indicated by the permittee on the permit.

Section 7-8-19 of the Code states that a stop-work order

> may be appealed by the permittee to the city council by filing a written notice of appeal within ten (10) days of the action of the city engineer. The city council shall hear such appeal, if written request therefor be timely filed, as soon as practicable, and render his/her decision within a reasonable time following filing of notice of appeal.

The Densleys allege that Pleasant Grove did not fully comply with the notice procedures outlined in its City Code. Although the city notified Mr. Densley through an email that he should stop working on improvements to Lot 8 and posted notice of the stop-work order on the property, it did not mail a notice of the order to the Densleys' home address as required by the City Code.

But "[a] failure to comply with state or local procedural requirements does not necessarily constitute a denial of due process; the alleged violation must result in a procedure which itself falls short of standards derived from the Due Process Clause." *Ward v. Anderson*, 494 F.3d 929, 935 (10th Cir. 2007) (citation omitted). Thus, "in deciding whether a state has violated a person's

9

constitutional right to procedural due process, [courts] should pay no attention to whether the state has complied with procedures mandated by state law." *Hulen v. Yates*, 322 F.3d 1229, 1247 (10th Cir. 2003). "[I]t is purely a matter of federal constitutional law whether the procedure afforded was adequate." *Id*.

The Densleys did not argue that the notices of the stop-work orders provided by Pleasant Grove were inadequate under the Fourteenth Amendment. Nor could they successfully do so. Constitutionally adequate notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). In other words, the "means employed [to provide notice] must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Id.* at 315. Winterton, Pleasant Grove's Public Works Director, stated in a response to an email from Mr. Densley: "Please stop the work until you have an approved plan and a notice to proceed from the City." The day after Winterton sent this email, Pleasant Grove employees posted three notices of the stop-work order on Lot 8. These notices posted on the property where the Densleys live and, more importantly, where the work was being performed were sufficient to give notice of the stop-work order. Moreover, in this day and age, the additional notice provided by way of an email response to another email sent by Mr. Densley was more likely to inform the Densleys of the stop-work order than a letter sent by mail. Under these circumstances, the notices were constitutionally sufficient because they were reasonably calculated to apprise the Densleys of the stop-work orders.[3]

---

[3] Notably, the Densleys do not argue that the appeal process provided for stop-work orders does not satisfy procedural due process. Even if they had, Tenth Circuit authority indicates that a post-deprivation appeal satisfies the hearing requirement of due process. *Rocky Mountain Rogues, Inc.*

In short, neither of the Densleys' procedural due process theories state a valid claim for relief.

B.    *Substantive Due Process*

Although the Densleys principally argue that the Pleasant Grove defendants violated their procedural due process rights, their complaint contains a single sentence asserting a substantive due process claim:

> Plaintiffs were denied substantive due process prior to ordering all work to stop on Lot 8 and criminally charging Nathan Densley because a legal, enforceable easement does not exist on Mr. Densley's property, and he could not be prohibited from improving his private property or charged with a crime for doing work on his private property without a permit in violation of the alleged, but non-existing easement.

ECF No. 2 at ¶ 316.

"So-called 'substantive due process' prevents the government from engaging in conduct that 'shocks the conscience,' . . . . *United States v. Salerno*, 481 U.S. 739, 746 (1987) (citation omitted). "This standard is not an easy one for a plaintiff to satisfy . . . ." *Ward v. Anderson*, 494 F.3d 929, 937 (10th Cir. 2007). It is not sufficient to show that a government decision or action was "incorrect or ill-advised." *Collins v. City of Harker Heights*, 503 U.S. 115, 129 (1992) (citation omitted). Thus,

> [i]t is well settled that negligence is not sufficient to shock the conscience. In addition, a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power. The plaintiff must demonstrate a degree of outrageousness and a magnitude of

---

*v. Town of Alpine*, 375 F. App'x 887, 893 (10th Cir. 2010) (unpublished) (holding that a post-deprivation appeal from the revocation of a building permit provides sufficient process given a municipality's interest in acting quickly to halt improper construction).

> potential or actual harm that is truly conscience shocking. This is a
> high level of outrageousness.

*Ward*, 494 F.3d at 937–38 (citation omitted).

The Densleys have not satisfied this exacting standard. The allegations of the complaint show that both Pleasant Grove and the Densleys believed that the Storm Drain Easement was valid and enforceable at the time that Pleasant Grove issued the stop-work order and criminally charged Mr. Densley for allegedly performing work in a public way without a permit. The Densleys did not formulate their theory that the easement is invalid until after these actions were taken. Moreover, even if the Densleys ultimately prevail on their challenge to the validity of the easement, Pleasant Grove's mistake regarding a complicated legal determination would hardly rise to the level of outrageous or conscience-shocking conduct. *See Onyx Props. LLC v. Bd. of Cnty. Commissioners*, 838 F.3d 1039, 1048–50 (10th Cir. 2016) (holding that county commissioners did not violate substantive due process by enforcing invalid zoning regulations, misrepresenting the status of the regulations, and engaging in a coverup). The Densleys, therefore, have failed to state a substantive due process claim.

## II.   FEDERAL TAKINGS CLAIM

The Takings Clause of the Fifth Amendment, applicable to the states under the Fourteenth Amendment, prohibits municipalities from taking private property for public use without just compensation. The Densleys assert that the Pleasant Grove defendants violated this prohibition by issuing stop-work orders and criminal citations related to improvements to Lot 8, effecting a regulatory taking by depriving them of the full use and enjoyment of their property and reducing its value. ECF No. 2, ¶¶ 342–53.

There are two types of regulatory takings claims. First, a landowner is categorically entitled to just compensation "where regulation denies all economically beneficial or productive use of land." *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015 (1992). "Second, when a regulation impedes the use of property without depriving the owner of all economically beneficial use, a taking still may be found based on 'a complex of factors,' including (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action." *Murr v. Wisconsin*, 582 U.S. 383, 393 (2017) (citation omitted); *see also Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978). These factors are commonly referred to as the *Penn Central* test. Because the Densleys do not allege that the Pleasant Grove defendants deprived them of all economically beneficial use of Lot 8, the court must analyze the *Penn Central* factors to determine whether the Densleys have stated a claim for a regulatory taking.

The economic impact factor requires the court "to compare the value that has been taken from the property with the value that remains in the property." *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 497 (1987). Notably, the Densleys do not allege that they applied for a permit from Pleasant Grove to construct a particular improvement on Lot 8 and received a final decision from the city denying permission to complete the requested improvement.[4] Pleasant Grove issued a stop-work order and initiated criminal charges because the Densleys failed to obtain a permit for work for which the city claimed a permit was required. *See* PLEASANT GROVE CITY CODE § 7-8-2 ("Any person desiring to perform work of any kind in a public way within the city,

---

[4] The Densleys allege that they had initially planned to combine the two water retention basins located on the Storm Drain Easement. But they abandoned this plan before Pleasant Grove made any permit determination for this planned work.

13

shall make application for a permit."). Thus, Pleasant Grove did not take any value from Lot 8 by forbidding any particular improvement to the property. The city merely enforced regulations requiring a permit for work performed in a public way. Absent any final land-use determination limiting the uses or development rights for Lot 8, the Densleys have not shown any impact to the value of the property.

The investment-backed expectations factor weighs against finding a regulatory taking for the same reasons. Absent a land-use determination restricting the permissible uses for Lot 8, no expectation regarding the development of the property has been thwarted. Moreover, the Densleys could not have had a reasonable expectation of developing Lot 8 without complying with Pleasant Grove's permitting process when they purchased the property.

Finaly, stop-work orders and criminal citations for performing work without a permit are not the types of government actions that constitute regulatory takings requiring compensation:

> A requirement that a person obtain a permit before engaging in a certain use of his or her property does not itself "take" the property in any sense: after all, the very existence of a permit system implies that permission may be granted, leaving the landowner free to use the property as desired. Moreover, even if the permit is denied, there may be other viable uses available to the owner.

*United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 127 (1985); *see also United States v. Locke*, 471 U.S. 84, 107 (1985) ("Regulation of property rights does not 'take' private property when an individual's reasonable, investment-backed expectations can continue to be realized as long as he complies with reasonable regulatory restrictions the legislature has imposed.").

In short, none of the *Penn Central* factors support finding that Pleasant Grove effectuated a regulatory taking by issuing stop-work orders and criminal citations. Whether the city was right or wrong about its assertion that a permit for the work performed was ultimately required,

enforcement of a permitting requirement is not a regulatory taking. Accordingly, the Densleys failed to state a claim for a violation of the Takings Clause of the Fifth Amendment.

## III.   FEDERAL EQUAL PROTECTION CLAIM

The Equal Protection Clause of the Fourteenth Amendment prohibits any state or its political subdivisions from denying any person "the equal protection of the laws." A plaintiff may bring an equal-protection claim alleging discrimination based on membership in a protected class (the traditional theory), or the plaintiff may allege that he or she was singled out and discriminated against irrationally (the class-of-one theory). The Densleys do not assert a traditional theory based upon membership in a protected class. Instead, they assert a class-of-one claim based on their allegations that the individual Pleasant Grove defendants "ignore[ed] the mandated civil administrative steps required by PGC Code Section 7-8-2 before causing criminal charges to be filed; unlawfully plac[ed] three stop work signs on the same date/time; fail[ed] to send the required written stop work notifications to the Plaintiffs; and [brought] the criminal charges." ECF No. 2 at ¶ 361.

In order to prove a class-of-one equal protection claim, a plaintiff must show that he or she "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). "The paradigmatic 'class of one' case, . . . is one in which a public official, with no conceivable basis for his action other than spite or some other improper motive (improper because unrelated to his public duties), comes down hard on a hapless private citizen." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011) (citation omitted). In order to successfully plead a such a claim, a plaintiff bears a "substantial burden" to allege facts showing that "others 'similarly situated in all material respects' were treated differently and that there is no objectively reasonable

basis for the defendant's action." *Id.* at 1217 (citation omitted). This "similarly situated" comparator requirement is strictly applied in order to prevent "a flood of claims in that area of government action where discretion is high and variation is common." *Id.* at 1218. The Tenth Circuit has emphasized that in situations where a "government actor enjoys a broader range of discretion, and may properly base a decision on a myriad of potentially relevant variables, it is more likely that there are 'material distinctions between allegedly similarly situated parties,' leading to 'a ready supply of rational and not wholly arbitrary reasons for differential treatment.'" *Id.* (citation omitted).

The Densleys have failed to state an equal protection claim because they have not pled facts demonstrating that "others 'similarly situated in all material respects' were treated differently" without an "objectively reasonable basis" for the differential treatment. *See id.* at 1217. The only comparators referenced in the complaint are the prior owners of Lot 8: the Walters. But the complaint merely states that Pleasant Grove did not bring criminal charges against the Walters or place multiple stop-work orders on the property without mailing written copies of the orders. ECF No. 2 at ¶ 362. The Densleys do not allege facts showing that the Walters were similarly situated in all material respects in that they were performing nearly identical improvements to Lot 8 without obtaining a permit, which the city believed to affect the Storm Drian Easement. The mere fact that the Walters owned the same property and were not criminally charged or subjected to stop-work orders is not enough. In order to carry their "substantial burden" of pleading facts to support a class-of-one claim for actions for which municipalities have broad discretion, the Densleys, at minimum, must also show that the Walters engaged in substantially similar improvements without obtaining a permit and that Pleasant Grove was aware of these improvements. Absent such allegations, the equal protection claim must be dismissed.

16

## IV.    CIVIL CONSPIRACY CLAIM

The Densleys also bring a civil conspiracy claim pursuant to 42 U.S.C. § 1983. They allege that the Pleasant Grove defendants, the CUWCD defendants, and the JVWCD defendants all conspired to take their property without just compensation in violation of their rights under the Takings Clause of the Fifth Amendment.

The court grants the defendants' motions to dismiss this claim. "*Provided that there is an underlying constitutional deprivation*, the [§ 1983] conspiracy claim allows for imputed liability; a plaintiff may be able to impose liability on one defendant for the actions of another performed in the course of the conspiracy." *Bledsoe v. Carreno*, 53 F.4th 589, 609 (10th Cir. 2022) (emphasis added) (citation omitted). The civil conspiracy claim asserted by the Densleys fails as a matter of law because the court has dismissed the underlying Takings Clause claim. *See Cont'l Coal, Inc. v. Cunningham*, 511 F. Supp. 2d 1065, 1090 (D. Kan. 2007) ("Because the Court has dismissed [plaintiff's] procedural due process claim, it sustains defendants' motions [for judgment on the pleadings] as to plaintiff's conspiracy claim under Section 1983 based on the denial of procedural due process.").

## V.    THE STATE-LAW CLAIMS AND DECLARATORY RELIEF CLAIM

Although the Densleys failed to assert any independent reason why their claims under the Utah Constitution should be treated differently than the federal constitutional claims, they reference the Utah analogs to the Due Process Clause, the Takings Clause, and the Equal Protection Clause in the complaint. The Densleys also assert a number of state-law tort claims against the defendants. Finally, the Densleys assert a declaratory relief claim under 28 U.S.C. § 2201, requesting a declaration from the court that the Storm Drain Easement is invalid under Utah law.

17

The court declines to address the defendants' motions to dismiss these claims because it chooses not to exercise supplemental jurisdiction over them.

The Densleys assert that the court has federal question jurisdiction over the federal claims under 28 U.S.C. §1331 and supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367. As discussed above, the court dismisses all of the federal claims. "The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c). In determining whether to exercise supplemental jurisdiction, federal courts weigh "the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Courts have consistently found that when all federal claims have been dismissed early in the litigation, these factors generally weigh in favor of dismissal of the state-law claims. *Id.* ("When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." (footnote omitted)); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.").

This case has not advanced beyond the pleading stage, and the court has not yet addressed the state-law claims. Because this litigation is in its early stages and because issues of state law are best left to the state courts absent a compelling reason to exercise supplemental jurisdiction, the

court dismisses the state-law claims without prejudice so that the Densleys can assert them in state court if they so choose.

Moreover, the § 2201 declaratory relief claim does not give rise to federal question jurisdiction. "[T]he Declaratory Judgment Act 'does not confer jurisdiction upon federal courts, so the power to issue declaratory judgments must lie in some independent basis of jurisdiction.'" *Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1202 (10th Cir. 2012) (citation omitted). Because issues for which the Densleys seek declaratory relief are purely matters of Utah property law, the court declines to exercise supplemental jurisdiction over the § 2201 claim as well.

Thus, the court dismisses all of the state-law claims and the § 2201 claim without prejudice.

## VI.    LEAVE TO AMEND

In their response briefs, the Densleys make generic requests for leave to amend if the court dismisses any claims. ECF No. 45 at 2 ("In the event the Court determines there are deficiencies in pleading facts and legal claims, Plaintiffs request the opportunity to amend their complaint."); ECF No. 50 at 2 (same); ECF No. 51 at 2 (same). Such "drive-by requests to amend the complaint do 'not rise to the status of a motion'" and do "not provide the district court with any specific allegations that it [can] weigh against the flaws that it had found in [the] complaint." *Johnson v. Spencer*, 950 F.3d 680, 721 (10th Cir. 2020) (citation omitted); *accord Albers v. Bd. of Cnty. Comm'rs*, 771 F.3d 697, 706 (10th Cir. 2014) ("[A] bare request to amend in response to a motion to dismiss is insufficient to place the court and opposing parties on notice of the plaintiff's request to amend and the particular grounds upon which such a request would be based."). Accordingly, district courts are not obliged to consider a cursory request for leave to amend placed in a response brief rather than filed as a separate motion. *Johnson*, 950 F.3d at 721; *Albers*, 771 F.3d at 706.

19

Because the Densleys did not file a motion to amend that lists the proposed amendments, justifies why leave to amend should be granted, or allows the defendants an opportunity to respond, the court does not consider the Densleys' drive-by requests for leave to amend in this case.

## CONCLUSION

The court grants the motions to dismiss filed by the Pleasant Grove defendants, the CUWCD defendants, and the JVWCD defendants. The court dismisses the federal due process, takings, equal protection, and civil conspiracy claims on the merits. The court further dismisses the Utah constitutional claims, the state-law tort claims, and the declaratory relief claim without prejudice for lack of subject matter jurisdiction.

DATED March 24, 2026.

BY THE COURT

Jill N. Parrish
United States District Court Judge